[Crim. No. 1908. Second Appellate District, Division One.—July 2, 1930.]

THE PEOPLE, Respondent, v. BESSIE GIBSON, Appellant.

Jesse R. Shafer for Appellants.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

CRAIG (ELLIOT), J., *pro tem.*—Defendant and one Hazel Spaney were jointly charged with burglary, alleged to have been committed by them on May 23, 1929, in entering a store with intent to steal merchandise therein. During the trial, said Spaney withdrew her plea of "not guilty" and entered a plea of "guilty." The trial continued as to appellant Gibson and resulted in a conviction of burglary of the second degree. After denial of motion for new trial, appellant was sentenced to imprisonment for the period prescribed by law, and her appeal is from the order denying her motion for new trial and from the judgment.

P. H. Leslie, a witness called by the prosecution, testified that he saw appellant entering the Paris store around two o'clock P. M., on May 23, 1929; that he recognized her and followed her; that she was alone; that she went to the third floor of the store, walked around and inspected various merchandise and then went out of the store and around to Sixth Street where she met her co-defendant Hazel Spaney. The latter was then in an automobile which was parked at the curb; that appellant and Hazel Spaney to-

gether then entered the Paris store and went to the third floor, where appellant rolled up a coat, took it from the hanger and handed it to Mrs. Spaney, who put it under her clothing; that he followed them to the automobile; that Hazel Spaney opened the door of the car and pulled the coat out of her clothing while appellant stood close to her; that he saw Mrs. Carpenter, a store detective, and Mrs. Ross, a policewoman, observing appellant and Hazel Spaney on their return to the automobile, and that, after conversation, the four women got in the car and started away; that he did not converse with any of them, but, after telephoning to the police station, went to the police station about twenty minutes later.

Mrs. Carpenter testified that as Mrs. Ross and she were leaving Bedell's store by its Sixth Street door, they observed and recognized appellant and Hazel Spaney and that ''Mrs. Spaney opened the door and stood with one foot on the running board and the other on the curbing, and Mrs. Gibson stood in back of her, held the door open. Mrs. Spaney pulled this coat out of her bloomers and put it in a leather bag that was on the floor of the car.'' Further, that after conversation with appellant and Hazel Spaney, Mrs. Ross and she took them to the police station.

Mrs. Mary Ross testified in substance the same as Mrs. Carpenter.

Mrs. Helen L. White, a saleswoman in the Paris store, testified that she saw appellant on the third floor of the store twice on May 23, 1929; first early in the afternoon at which time appellant was alone, and the second time about 2:30 or 3 P. M. with Mrs. Spaney.

In addition to the foregoing testimony, the prosecution was permitted to call witnesses concerning prior events. Mrs. Ethel Green testified that she was a house operator at the May Company; that she saw Mrs. Gibson and another woman (not Mrs. Spaney) in the May Company's store about October or the first part of November, 1928; that Mrs. Gibson then took a mandarin set, put it under her clothing, went to the basement, saw they were followed, went upstairs and put the mandarin set back on the table and ''laughed at me''; that on February 13, 1929, Mrs. Gibson and Mrs. Spaney were in May Company's store; that Mrs. Gibson took two hats, folded them with two other

hats handed to her by Mrs. Spaney, and put the four hats under her coat; that on another occasion, she saw Mrs. Gibson with one Grace Walthers in the Broadway department store. Mrs. Agnes Armstrong testified that she was a house detective for May Company; that she saw Mrs. Gibson about a year before the trial date in May Company's store; that she answered a call bell and with Mrs. Green followed Mrs. Gibson and another woman to the basement and on return to the negligee department on the third floor where Mrs. Gibson took from under her clothing a garment and threw it upon a table, and "turned around and laughed"; that she (Mrs. Armstrong) followed them out of the store to the curb where they spoke to a man in a Lincoln automobile, on to a drug-store at 8th and Olive Streets; they went in one entrance and Mrs. Gibson went on through and out on another street, through a parking lot and came around the block back of the drug-store, met the other woman and both got in the above-mentioned automobile as it drew up on 8th Street; that she saw Mrs. Gibson together with one Grace Walthers on the third floor of the Broadway department store in the latter part of March or first of April, 1928; that Mrs. Green and she (Mrs. Armstrong) followed them out of the store to a car parked at the curb; that they got into the car and began pulling underwear out from under their clothing; and that the automobile was the same Lincoln car she had observed at the time of the May Company episode.

Appellant testified that she had not been on the third floor of the Paris store on May 23, 1929; that she entered the store but once on that day and that that entering was with Hazel Spaney, who said she wished to purchase a little girdle; that Mrs. Spaney made her purchase on the first floor and then went upstairs to a rest-room to put on the girdle, because her stockings were dropping; that she (appellant) did not go upstairs, but waited on the millinery floor—a balcony floor just up the stairs from the first floor; that Mrs. Spaney returned in about five minutes; that they returned to the car and then were taken by the policewomen to the police station; that she did not enter the store to steal and knew nothing of the coat in question until she saw it in the automobile; that the sole purpose of her entry into the

store was to accompany Mrs. Spaney while she purchased a girdle.

Hazel Spaney, called by the appellant, testified that she purchased a little garter belt and paid for it at the Paris store on May 23, 1929. She identified the receipt which she received at that time and the receipt was marked as an exhibit in the case.

Appellant's objections to this testimony of other offenses were overruled and her motions to strike out were denied. It is upon these rulings that appellant's principal claim of prejudicial error is founded. At the trial the prosecution stated that evidence of other offenses was being offered for the purpose of showing the intent with which appellant entered the store. The court instructed the jury on request of the prosecution "that evidence of other crimes near in time to the one alleged in the information are admitted for the sole purpose of showing a plan or system of criminal action, and as indicating a knowledge and intent and that the act charged was not the result of accident or inadvertence."

Respondent cites only *People* v. *McGill*, 82 Cal. App. 98 [255 Pac. 261]. That case is not in point because the facts are totally dissimilar to the facts of this case.

█ The general rule is that evidence of other offenses cannot be introduced, but there are exceptions to this general rule. "If the evidence of another crime is necessary or pertinent to the proof of the one charged, the law will not thwart justice by excluding the evidence, simply because it involves the commission of another crime. (*People* v. *Tucker*, 104 Cal. 440 [38 Pac. 195].) The general tests of the admissibility of evidence in a criminal case are: 1. Is it part of the *res gestae?* 2. If not, does it tend logically, naturally and by reasonable inference, to establish any fact material for the People, or to overcome any material matter sought to be proved by the defense? If it does, then it is admissible, whether it embraces the commission of another crime or not, whether the other crime be similar in kind or not, whether it be a part of a single design or not." (*People* v. *Ellis*, 188 Cal. 682, 690 [206 Pac. 753, 756]; *People* v. *Sanders*, 114 Cal. 216 [46 Pac. 153].)

█ Testing the present case by above principle, it is at once apparent that we have but one question, to wit: Does

the testimony of the other offenses "tend logically, naturally and by reasonable inference to establish" as a fact in this case that Mrs. Gibson entered the Paris store with intent to steal. The mandarin set episode of Mrs. Gibson and Grace Walthers indicates a larceny; the hat episode of Mrs. Gibson and Mrs. Spaney indicates a larceny, and possibly the pulling of underwear from under their clothing after having been in the Broadway department store indicates a larceny by Mrs. Gibson and Grace Walthers. To make this testimony admissible in this case, we would have to hold in effect that proof of an intent to commit a larceny may be made by proving other larcenies. Evidence of other and independent larcenies is not admissible to establish a larceny charged in a case on trial. (*People* v. *Barnes,* 48 Cal. 551; *People* v. *Hartman,* 62 Cal. 562; 15 Cal. Jur. 936; 9 Cor. Jur. 1069.)

It would seem to follow then that such evidence is not admissible to prove an intent to commit larceny, and that this is true even though the "intent to commit larceny" is the *specific intent* of a charge of burglary.

We are aware of the many decisions in cases involving such offenses as embezzlement, forgery and obtaining money or property by false pretenses, in which testimony of "other offenses" has been admitted to prove the specific intent to defraud, but an examination of those cases discloses in each some connection between the offense charged and the "other offense" other and more than the deduction (not recognized in law) that because the defendant committed *that offense* he must have committed *this offense.*

If such a conclusion were allowed by law, then everyone who has committed a larceny, within such period of time as the trial judge might hold to be within a reasonable time prior to the offense charged, could be convicted of burglary upon entering any store, although such entry be in fact solely for the purpose of purchasing merchandise. We think the exception to the general rule of inadmissibility is not to be extended that far. Our conclusion is that the erroneous admission of testimony of other acts was prejudicial to defendant in view of the conflicting testimony on the facts as stated above.

██ Appellant claims that the court erred in giving the following instruction, to wit: "The word 'wilfully', when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act or make the omission referred to. It does not require any intent to violate law or to injure another, or to acquire any advantage." In this connection appellant cites *People v. Maciel*, 71 Cal. App. 213, 217 [234 Pac. 877, 879], wherein the court said: "Whenever a specific intent is an essential ingredient of the offense no presumption of law can arise as to the existence of such intent, for it is a fact to be proved like any other fact in the case." Appellant Gibson contends that "the instruction complained of tells the jury in effect that if the appellant did at the time in question enter the Paris store and commit the theft of the coat in question, that she is guilty of burglary. In other words, it tells the jury that they can convict appellant of burglary without her having entered with the necessary intent" to steal.

Standing alone the instruction, as to the meaning of "wilfully" is proper (Pen. Code, sec. 7, subd. 1), but a trial court, when giving this instruction, should make certain that the jury understands that this definition of "wilfully" applies only to "general" intent and not to "specific intent".

██ The court defined burglary and stated the law as to the burden of proof in the language of the statutes and further instructed that "The essence of the offense of burglary consists in the intent with which such entry is made."

We think that the jurors were not misled as to the burden of proof of the specific intent when the instructions are considered as a whole. However, on a retrial it is possible that the point may be covered by a revision of the instructions to more clearly show the distinction between general intent and specific intent.

The judgment and order are reversed and the cause is remanded for a new trial.

Conrey, P. J., and Houser, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 15, 1930, and a petition

by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 31, 1930.

Shenk, J., and Waste, C. J., dissented.