THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* GERÓNIMO ROSADO PÉREZ, Defendant and Appellant.

No. 15822. Argued June 1, 1955.—Decided June 23, 1955.

*Santos P. Amadeo* for appellant. *José C. Aponte, Acting Attorney General,* and *Rafael L. Ydrach Yordán, Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Jerónimo Rosado Pérez was prosecuted and convicted of the offense of burglary in the first degree. He was sentenced to serve an indeterminate sentence in the penitentiary at hard labor. In his appeal to this Court he assigns two errors, the second of which is to the effect that: "the trial court erred in failing to instruct the jury that the offense of burglary in the first degree requires a specific intent to commit it and that the degree of intoxication may be such as to render defendant incapable of having the intent, thus resulting in his exoneration from the commission

of the offense." The *Fiscal* of this Court agrees to the reversal for the reason stated, alleging in his brief, among other things, that "in those offenses where a *specific intent* is required, it is necessary for the trier of facts to consider all the evidence which defendant has been able to produce about his drunkenness before determining whether or not the accused is guilty." We agree. The witnesses for the prosecution testified that defendant confessed his offense in their presence, but that he maintained that he was completely drunk immediately before and at the time he committed it. The defendant and his wife both testified in similar terms, when the former testified at the trial as well as in a written confession made before a justice of the peace. After the evidence was presented and the corresponding instructions were given, the jury withdrew to deliberate. A few minutes later the jury was called to the courtroom by the trial judge, who addressed them in the following manner:

"Defendant is present. I call you because it seems that my instructions were not sufficiently clear for the jury to have already reached a verdict within the minute of rising and sitting down. I did not order you to render the verdict here because I wished to follow the custom of the court to withdraw to the jury room to deliberate. My instructions are specific; *the court orders you to convict the accused, to bring in a verdict of guilty of burglary in the first degree*. You can not reach any other verdict. There is nothing to discuss or deliberate. Defendant has admitted the facts under oath in open court and he has also admitted having confessed before the Justice of the Peace and before the aggrieved person . . . *I have told you that I can not give any other instructions but to convict;* I can not give any instructions for acquittal." (Italics ours.)

After hearing these instructions the attorney for the defense said:

"We respectfully object to the instructions of the court, to the former ones as well as to those it has just given."

Several members of the jury then addressed the trial judge who proceeded with his instructions:

"*Drunkenness is no defense for any crime.* That I also forgot to tell you . . . I told you that I could not, that I was precluded from giving any instructions other than to convict, because here it is the only thing possible. The only evidence introduced in this case was that presented by the prosecuting attorney which consisted of three witnesses who testified that defendant entered a public establishment at nighttime, stole and the things stolen were subsequently seized; that the accused confessed his offense before three persons, and he made an oral and a written confession before the Justice of the Peace. Besides, there is defendant's own evidence corroborated by his wife, *who testified that he committed the offense and that he was drunk at that time. That is no defense. Drunkenness is no defense. A person, unless insane, because of the fact that he is drunk, is capable of committing any offense.* But defendant himself has said and explained how he committed the offense: That he entered that *cafetín,* that he took a beer and drank it; that he went to look for a can of spaghetti; that upon leaving the *cafetín* he felt the temptation of committing burglary and that he committed it. That is, here the jury has no . . . No person who hears that evidence can have any doubt that the offense was committed. There is absolutely no contradiction between the witnesses for the People and those for the defense or among the witnesses themselves; nor is there any contradiction in the evidence. The only thing that defendant's attorney has done is to honestly present what evidence he has, and to present defendant's testimony; and all that evidence aids me, when pronouncing sentence, to be benevolent with defendant because it is not the same where a person has always led a decent life . . ." (Italics ours.)

Although defendant took no specific exception to the foregoing instructions—*People* v. *Vélez,* 77 P.R.R. 775; *People* v. *Piazza,* 60 P.R.R. 561, 571; *People* v. *Cardona,* 50 P.R.R. 104, 105; *People* v. *Quirós,* 48 P.R.R. 939, 942; *United States* v. *Daily,* 139 F. 2d 7, 9—we consider that the error committed is fundamental and that it must result in reversal. Let us see.

Pursuant to § 408 of the Penal Code "Every person who enters any house, room, apartment, tenement, shop, warehouse, store, . . . with intent to commit grand or petit

larceny, or any felony is guilty of burglary." On the other hand, § 41 of the Penal Code provides that "no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. *But, whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act.*" (Italics ours.) If the latter section of the Penal Code had merely contained the first sentence above copied, it is possible that the preceding instructions would conform to law. But such is not the case. That section contains a second sentence, whose scope and effect the trier should have kept in mind when transmitting his instructions to the jury. In relation with it we said the following in *People* v. *Rivera*, 70 P.R.R. 541, 544:

"The rule adopted in those jurisdictions where provisions of law identical or similar to that contained in § 41 of our Penal Code prevail, is that drunkenness—voluntary—must be of such degree or extent that it will deprive defendant of his mental capacity to form the specific intent required by the Code for the conviction of a crime—or degree thereof—requiring such specific intent, and that *the determination of that fact is essentially incumbent on the jury or on the court sitting without a jury*," quoting innumerable cases from the United States. (Italics ours.)

In those cases where the accused has committed the crime charged in a state of intoxication, Burdick's *Law of Crime*, 1946 Ed., Vol. 1, p. 216, states:

"It is held, however, in most states, in modification of the general rule, that if one is charged with an offense which requires, as an essential element, a specific intent, or some particular motive or purpose, other than the general or common intent required in all crimes, evidence of the accused's intoxication at the time he committed the crime is admissible, for the

purpose of showing that, owing to his mental condition, he was not capable of forming the specific intent, or of entertaining the motive or purpose necessarily required to constitute the crime, and upon sufficient evidence to that effect, drunkenness is generally a defense."

In Wharton's *Criminal Law*, 12th ed. Vol. 1 pp. 98 and 101, the following appears:

"When a particular condition of mind is requisite to constitute an offense, intoxication may be proved to explain such condition. . . . If the existence of a specific intention . . . is essential to the commission of a crime, the fact that an offender was drunk when he did the act which, if coupled with that intention, would constitute such crime, should be taken into account by the jury in deciding whether he had that intention."

To that effect, see also *Hopt* v. *People*, 104 U. S. 631, 26 L. ed. 873; *People* v. *Smith*, 14 Cal. 2d 541; *People* v. *Gordan*, 103 Cal. 568, 575; *People* v. *Blake*, 65 Cal. 275.

Section 408 of our Penal Code explicitly requires that in order to commit the offense of burglary the entering into the house, store, etc., must have been *"with intent to commit grand or petit larceny . . ."* [1] So then, in this offense the intent plays an important role, and the determination of whether or not it existed must be left entirely to the trier of facts, which in this case was the jury which heard the case. On that point in *People* v. *Gibson*, 107 Cal. App. 76, 82, it is said that: "the essence of the offense of burglary consists in the intent with which such entry is made."

In *People* v. *Phelan*, 93 Cal. 111, appellant and two other persons were accused of burglariously entering a building with the felonious intent of committing larceny therein. The main contention of appellant Phelan was that the trial court erred in giving instructions to the jury as to his degree

---

[1] The Spanish text says *"con el propósito, etc,"* but the English text, which should prevail (see § 13 of the Civil Code, 1930 ed.) reads as copied above, a more adequate translation being *"con intención de cometer hurto mayor o menor."*

of intoxication. Upon reversing the judgment appealed from and ordering the case remanded for a new trial, the Supreme Court of the State of California on p. 113 said the following:

"Entering a building with intent to commit grand or petit larceny, or any felony, constitutes burglary. . . . . . The intent with which a building is entered is a necessary element to constitute a particular species of crime, viz., the crime of burglary. Therefore the jury might have taken into consideration the fact, if such were the fact, that the accused was intoxicated at the time he entered the building, in determining the purpose, motive, or intent with which he committed the act. . . . We are not at liberty to speculate as to what the verdict might have been if a proper instead of an erroneous instruction had been given. As given, the instruction withdrew from the consideration of the jury evidence which the code says a jury may consider in determining the intent with which an act is committed.

"The evidence in this case tends to prove that appellant, before and at the time he entered the building, was intoxicated. Whether he was intoxicated to such a degree as to render him incapable of forming or entertaining an intent to commit grand or petit larceny, or any felony, in the building was exclusively for the determination of the jury."

We can express ourselves in similar terms in this case. An instruction to that effect must be transmitted to the jury when evidence has been presented tending to prove defendant's intoxication before and at the time of committing the offense. As has been seen, there was such proof in this case.[2] The fact that the trial judge did not permit the jury to decide whether defendant was drunk to the point where he was incapable of forming or having the intent to commit grand or petit larceny when entering his neighbor's establishment, was an error which requires the reversal of the judgment.

---

[2] Defendant says in his confession "that on the night of December 28, 1953, about 1 a.m., after taking a few drinks to forget my worries because I had a quarrel with my wife, I entered the store of Manolín Díaz Morales"; and in his testimony before the jury he said that on

In view of the foregoing conclusions, it is unnecessary to discuss the other error assigned.

The judgment appealed from will be reversed, and the case remanded to the Superior Court for a new trial.

the night of the 28th a gentleman whom he met at the YMCA went to visit him; that they had dinner in his home and afterwards they went to his *cafetín;* that they kept drinking in the *cafetín* until 12 p.m. when his visitor returned to San Juan; that then he returned to his home and when he asked his wife to give him some dinner, she answered that there was none left; in view of that he went back to his *cafetín* to get a can of spaghetti and that then "I had the intention of committing that offense."

Defendant's wife testified that her husband and the gentleman who was visiting him had dinner at her home; that afterwards they left and that her husband returned by dawn "too drunk", that her husband (defendant) asked for some dinner to which she replied that there was none left; that then he went out and came back about an hour later "more drunk than when he left" and he went to bed with all his clothes on.