[Crim. No. 1068.   Fourth Dist.   June 25, 1956.]

THE PEOPLE, Respondent, v. CHARLES R. LITTLE et al., Appellants.

Augustine, Bryans & Ragen and William B. Enright for Appellants.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendants were charged with conspiracy to commit the crime of pimping in Count I of an indictment, alleging seven overt acts between April 26, 1955,

and May 7, 1955. In Count II both were charged with the crime of pimping committed on April 28; in Count III, Collier was charged with the crime of pimping committed on May 5; in Count IV Little was charged with the crime of rape; and in Count V Collier was charged with the crime of rape. All of the alleged offenses involved the same young woman, who was 17 years of age. A jury found the defendants guilty of conspiracy as charged in Count I; found each guilty of rape on the applicable count, recommending imprisonment in the county jail; and found them not guilty of the crime of pimping as charged in Counts II and III. They were sentenced to jail on the rape counts, and to prison on the conspiracy count. They have appealed from the judgment, and from an order denying their motion for a new trial.

It is contended that the evidence does not support the conspiracy conviction in that there was no sufficient corroboration of the testimony of the prosecuting witness, who was an accomplice. It is argued that nothing appears in this connection except that the defendants registered the prosecuting witness at three motels during this period, with one of the defendants, in each instance, registering as Mr. and Mrs. Miller; and that this is not sufficient to connect them with the crime of pimping unless it is aided by the testimony of the prosecuting witness. While it must be conceded that the corroboration was very slight, the testimony of the defendants as to their activities with the prosecuting witness during this period, and the reasons therefor, was somewhat unsatisfactory, and it could probably be held that there was sufficient corroboration under established rules as set forth in *People* v. *MacEwing*, 45 Cal.2d 218 [288 P.2d 257].

Appellants' main contention is that the court erred in limiting their cross-examination of the prosecuting witness, thus preventing them from bringing out important matters affecting her credibility; that this was necessarily prejudicial; and that the rulings in this connection had the practical effect of destroying their defense. It is argued that a report was made by the prosecuting witness to the Oceanside police department and the Marine Corps authorities on May 11, in which in addition to the charges here involved she accused the defendant Collier of committing an armed robbery in San Diego, of planning a robbery in Nevada, of being engaged in the narcotic traffic, and of killing two of her former girl friends "because they wouldn't stay in line"; that Collier was arrested on May 12; that on May 12 or 13 the prosecuting

witness stated to the authorities that the charges she had made against Collier were all untrue and he had never done her any wrong, which was followed by a written statement reiterating her oral retraction; that Collier was released on May 14; and that some of these matters could properly be brought out on cross-examination.

At the trial the defendants endeavored to bring out evidence showing that the prosecuting witness had made oral and written statements to the authorities retracting her charges, and had made statements which conflicted with her testimony on the stand. None of this evidence was admitted and it is claimed that a large number of the rulings in this connection were erroneous. It appears that the defendant Collier was rearrested sometime in July, and the defendants were indicted by the grand jury on August 15, 1955.

There are 260 pages in the briefs alone, and it would serve no useful purpose to set out all the details in connection with the numerous errors claimed in this connection. In some instances the objections to questions were properly sustained and in some the matters were of little or no importance. In some of the others, however, a different situation appears. In several of the questions the prosecuting witness was asked as to whether she had talked with investigating agents of the Marine Corps and with police officers on May 7 and May 13, with respect to her charges of robbery, narcotic traffic and murders, and whether any further investigation had been made by these agents and police officers after May 13, and objections were sustained on the ground that these matters were immaterial. She was also asked the following questions, to which objections were sustained on the ground they were immaterial: "Have you ever made any statement inconsistent with your testimony now?"; "Have you ever told anyone that you lied about Sergeant Collier"; "Have you made two written statements concerning your activities from April 20th to May 7th?"; "Have you ever made a written statement inconsistent with your present testimony in court here?"; "Have you ever read over your written statements prior to your testimony here in court?"; "Have you ever said Sergeant Collier did not procure for you, did not pimp for you, did not have intercourse with you, have you ever made such a statement?"; "Is it not true, . . . in the early morning hours between 12 midnight and 2 a. m. on May 13th in the city of Oceanside that you made a statement, both oral and written, that Sergeant Collier was not guilty of any and all of the

accusations you had made against him?" When this question was asked no objection was made, but the court said: "You don't have to answer that question. I will sustain an objection on the same grounds as I have sustained it heretofore."

An offer of proof was made offering to lay a foundation for two conversations, both of which produced a written statement; to prove that when the prosecuting witness made her initial charges she stated, in addition to what she stated at the trial, that Collier was engaged in narcotics traffic, was wanted for robbery, and had murdered two of her friends because they would not stay in line, and that she feared for her life because of these things; that these charges were an integral part of her original story; that she later made statements at the Oceanside police station withdrawing all her charges against Collier and at the same time made a complete written retraction; and that in withdrawing her charges she stated that Collier had nothing to do with any payment to her, or ever committed rape or had intercourse with her. The offer of proof was rejected. Counsel for the defendants tried in many ways, without success, to get some of this evidence into the record, citing to the court *People* v. *Gallardo,* 41 Cal.2d 57 [257 P.2d 29], where an exception to the usual rule is pointed out, when the prosecution has in its possession statements made by a prosecution witness which are contradictory of his present testimony upon relevant matters; and *People* v. *Hume,* 56 Cal. App.2d 262 [132 P.2d 52], pointing out the importance in such a case as this of bringing out whether the prosecutrix had told the identical story at other times, and holding that great liberality should be used in receiving such evidence.

It has frequently been held that questions as to the making of contradictory or inconsistent statements should be allowed, without laying the formal foundation for impeachment, since the result may depend upon the answer received and the witness may impeach himself, and otherwise the foundation may then be laid; or since other circumstances may justify allowing the question to be answered. (*People* v. *Jones,* 160 Cal. 358 [117 P. 176]; *People* v. *Campos,* 10 Cal. App.2d 310 [52 P.2d 251]; *People* v. *Hume,* 56 Cal.App.2d 262 [132 P.2d 52]; *People* v. *Vollmann,* 73 Cal.App.2d 769 [167 P.2d 545]; *People* v. *Goldberg,* 110 Cal.App.2d 17 [242 P.2d 116]; *People* v. *Brophy,* 122 Cal.App.2d 638 [265 P.2d 593].) Some of the questions asked did not require any foundation, and some were preliminary. All were disallowed as not being material to the issues in the case, and where, in

some instances, witnesses were produced for the purpose of showing the statements had been made, objections were sustained on the ground that a proper foundation had not been laid. ▮ As was said in *People* v. *Hume,* "It seems to us that defendant's counsel should have had the active cooperation of the court in any good faith endeavors to test the credibility of the prosecuting witness."

This was a close case as is shown by the evidence and by the fact that the jury was out practically 24 hours. The jury did not believe a large part of the testimony of the prosecuting witness, as shown by the finding of not guilty on the direct charges of pimping. ▮ Under the circumstances shown by the record the most important question in the entire case was as to the credibility of the prosecuting witness, and that matter affected both appellants. Many of the questions ruled to be immaterial were material on that question. Whether the prosecuting witness had made contradictory statements to the officers, whether she had made charges which the officers found to be unsupported, and whether she had made oral and written retractions of the various charges, including those here involved, were certainly material on the question of her credibility. Assuming that in some instances a proper foundation may have been necessary, in many of them the evidence was admissible under established rules without any showing as to the time and place and parties present. The respondent's main contention in this regard is that in some instances the time, place and parties present were not clearly specified, that in some the reference to any and all of the accusations she had made was "quite general," and that in view of the general nature of the questions asked the exclusion of an answer was within the discretion of the trial court. The object of a trial is to bring out the true facts as far as possible, and the court's discretion should be exercised to that end. This is particularly true with respect to matters affecting the credibility of the prosecuting witness in such a case as this, especially where it appeared that there might have been a retraction which at one time caused the investigating officers to drop the matter and release one of the defendants. Many of the statements in *People* v. *Hume, supra,* on the compelling reasons for extending the right of cross-examination to its broadest reasonable limits in such a case are applicable here. As the court there said:

"If he had been allowed to proceed and had succeeded,

such contradictory statements might have influenced the decision of the entire case. Nothing which occurred at the trial would have been more helpful to the court in arriving at the truth than to know whether the prosecutrix had told the identical story each time she had related it or whether she had varied it or added to it after her first narration, and nothing could have been more vital to defendant's case than to be able to show that she had made conflicting statements.''

It is not necessary to consider many other points raised, some of which are not entirely without merit. From the record as a whole we are of the opinion that a number of prejudicial errors occurred, as a result of which the appellants did not have a fair trial.

The judgment and order are reversed, and the cause remanded for a new trial.

Griffin, J., and Mussell, J., concurred.