[Crim. No. 1418.    Fourth Dist.    June 15, 1959.]

THE PEOPLE, Respondent, v. HARRY ROBERT RIVERS, Appellant.

Harry Ellman and Howard R. Harris for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Ernest E. Sanchez, Deputy Attorney General, for Respondent.

SHEPARD, J.—Defendant was charged with the crime of abortion. After a trial by jury he was found guilty as charged, his motion for a new trial denied, and he was granted probation for five years on condition he serve 60 days in the custody of the sheriff of San Diego County. He appeals from the judgment of conviction and from the order denying his motion for new trial.

A brief summary of the evidentiary details is necessary to understand the points of law raised. Defendant is a licensed pharmacist. The prosecuting witness, whom we will hereinafter call "victim" for brevity's sake, applied at his place of employment for the purchase of epsom salts to induce the recommencement of her menstrual period. Defendant volunteered to her that such an effect would not be produced by epsom salts, but that if the victim would meet him after midnight at an appointed place he would have something for her.

At such later meeting a conversation there occurred about her possible pregnancy, and the use of drugs and an instrument to cause an abortion. They went to the victim's apartment and he performed a sex act on her. He then inserted a catheter about 12 inches long in her vagina. After removing the catheter it showed blood on its end. He then gave her some white pills of quinine to take. Two days later he gave her some different pills containing ergot. A further discussion then occurred about the repeated use of the catheter and stronger medicine for the purpose of producing a miscarriage. Another appointment was tentatively made. Later, the witness became alarmed at her feeling of illness, contacted her family doctor, was taken to a hospital and examined, the police were contacted, and a new appointment was made for the defendant to come to the victim's apartment to again use the catheter. Two officers were concealed in the apartment when he arrived. A conversation then occurred referring to the former use of the catheter and the drugs and two additional drugs, and to intended repetitive use of the catheter at that time. The victim then started to prepare for the use of the catheter by removing her clothing, and the officers stepped from hiding and arrested the defendant. At that time he had a catheter in his hand and a portion of another catheter in his pocket. Two bottles, one containing terramycin pills and one phenobarbital pills were on the coffee table in front of him, and were identified by him as his. He also identified the other two bottles previously given to the victim by him. He later admitted to an officer that he had placed the catheter in the witness and had given her the pills. The physician testified that the total procedure outlined would usually cause an abortion. A great deal of this evidence was corroborated by defendant's own testimony. He places the onus of affirmative inducement on the victim, and the essential elements of the victim's story of preparation, disinfecting the catheter, disrobing, the furnishing of medicines are all present except that he states that he only pretended to insert the catheter and that he did not know what a catheter was for, and that he did not intend to commit an abortion. A review of the whole testimony convinces us that the evidence was more than ample to sustain the conclusion of the jury.

The defendant first complains that the cross-examination of the victim by defense counsel during the preliminary hearing was improperly and materially restricted and that, therefore, the trial court committed error in permitting such testi-

mony of the victim to be read in evidence at the trial of the cause.

Without covering each question in full it may be said that these questions fall generally into two categories. ■ First, the questions to which an objection was sustained on the ground they had been previously asked and answered. An example of these is the first one about which defendant complains of the ruling of the court: ''When he manipulated [the catheter] did you feel any sensation?'' On the previous day, different forms of this question were asked by defense counsel no less than eight times, to which on five occasions the witness gave affirmative answers directly responsive to the question asked. The court's refusal to allow a further question along the same line was well within the bounds of propriety and was not an abuse of discretion.

■ The second category was that of questions which on their face did not appear to be material but which the court might well have allowed had counsel made some explanation of his purpose, or pointed out just how the question was material. The first of this type of questions, to which objection was sustained and of which complaint is made, is sufficiently exemplary of all. The victim had been asked why she had not gone to work on August 15th, and she had answered that she felt sore, had a headache and discomfort, and was not able to work. Thereupon, the following question was asked: ''Q. Did you report this to your employer?'' An objection thereto was sustained. The charge here was abortion. The question as to whether or not she told her employer at a later time that she felt ill or had a headache could have no obvious nor direct bearing on this charge nor on the veracity of the witness, and on its face would not be material. If counsel had explained his purpose in this questioning or how he thought it might later become material the magistrate may well have allowed the question, but counsel gave no such explanation nor assistance to the court in this respect.

■ Error will not be predicated on the trial court's refusal to allow questions which have no apparent materiality unless counsel makes clear to the trial court the purpose of such question and it does, in fact, have a legitimate purpose.

■ The direct examination covered the inducement, conversation, the preparations, the act itself and the events directly pertaining to further contacts with the defendant, resulting in his arrest. It apparently occupied no more than an hour

in time and it covers only 36 pages of transcript. On the other hand, the cross-examination covered substantial parts of two days, occupied 242 pages of transcript, and was searching, extensive and very repetitive. Relatively few objections were made by the prosecution and fewer were sustained. A review of the sustained objections of which defendant complains reveals no serious abuse of discretion and no prejudicial error.

It is true that cross-examination should be allowed considerable latitude and freedom and should not be unduly restricted. (*People* v. *Flores,* 15 Cal.App.2d 385, 401 [2-3] [59 P.2d 517]; *People* v. *Lain,* 57 Cal.App.2d 123, 135 [5] [134 P.2d 284]; *People* v. *Whitehead,* 113 Cal.App.2d 43, 48 [1-2] [247 P.2d 717]; *People* v. *Little,* 142 Cal.App.2d 513, 517 [2] [298 P.2d 548]), and that the transcript of a preliminary examination wherein the right of cross-examination has been unduly and improperly restricted should be rejected when offered under the provisions of Penal Code, section 686. (*People* v. *Redston,* 139 Cal.App.2d 485, 496 [8] [293 P.2d 880].) But it is also true that:

"The court has, however, discretionary power over cross-examination which will be disturbed on appeal only in case of an abuse thereof. Thus the court may confine an examination within reasonable limits, and *may curtail a cross-examination which is unduly protracted, frivolous, or which relates to matters which are irrelevant, admitted or have already been fully covered.* (*People* v. *Whitehead, supra,* page 48 [1-2]; *People* v. *Ormes,* 88 Cal.App.2d 353, 358 [3] [198 P.2d 690]; *People* v. *Serpa,* 67 Cal.App.2d 327, 332 [7] [154 P.2d 6]; *People* v. *Corlett,* 67 Cal.App.2d 33, 46 [153 P.2d 595, 964]; *People* v. *Ashcraft,* 138 Cal.App.2d 820, 827 [10-11] [292 P.2d 676].)

As the Supreme Court stated in *People* v. *Lyons,* 50 Cal.2d 245, 261 [11] [324 P.2d 556]: "Where the question does not show on its face whether or not it is material, the questioner, in order to claim error in sustaining an objection thereto, must reframe it or make offer of proof to show its materiality."

Defendant contends that the evidence that defendant indulged in oral copulation of the victim's sex organ during the preparations for and immediately preceding the insertion of the catheter, was improperly admitted as tending to unnecessarily degrade and prejudice defendant in the minds of the jury. The act spoken of was an incident of the prepara-

tions for the culminating act of the crime charged, and as such was clearly admissible as a part of the res gestae as well as tending to show motive, intent and a relevant circumstance. (*People* v. *Gibson*, 107 Cal.App. 76, 80 [1] [289 P. 937]; *People* v. *Albertson*, 23 Cal.2d 550, 576 [4] [145 P.2d 7].)

Evidence of an intermixed or blended detail of the whole criminal scheme is not rendered inadmissible merely because it tends to show the commission of a separate crime nor because it happens to degrade the defendant. (*People* v. *Knowles*, 75 Cal.App. 229, 230 [2] [242 P. 508]; *People* v. *Raucho*, 8 Cal.App.2d 655, 668 [18] [47 P.2d 1108]; *People* v. *Ciulla*, 44 Cal.App. 719, 722 [2] [187 P. 46]; *People* v. *Hunt*, 17 Cal.App.2d 284, 286 [3] [61 P.2d 1208].) The evidence referred to as inadmissible in the authorities cited by defendant was disconnected from the crime charged, both in fact and in time, and furnishes no analogy to facts referred to in the case at bar.

Defendant complains that the foundation for the use, under authority of Penal Code, section 686, of the transcript of the victim's testimony at the preliminary examination was insufficient. The evidence showed that the victim had been placed under subpoena by the prosecution; that she was notified by letters; that she told neighbors she was leaving for the state of New York; that she told a policewoman the same; that many calls were made by police officers to locate her; that she could not be found; and that she had in fact left by Transcontinental Air Lines. A bench warrant was issued and "returned unable to serve" before the close of the case. Under the circumstances, we are satisfied that the court's ruling permitting the reading of the transcript of the victim's testimony at the preliminary examination was correct. (*People* v. *Raffington*, 98 Cal.App.2d 455, 458 [5] [220 P.2d 967]; *People* v. *Howard*, 16 Cal.App.2d 349, 350 [1] [60 P.2d 336].)

Lastly, the defendant contends that the court committed prejudicial error in failing to give an instruction that the prosecution must establish beyond reasonable doubt that the defendant did employ the instrument on the person of the victim in the belief that the employment of the instrument would procure a miscarriage. This objection was refused as covered and repetitive of instructions already given. A reading of the instructions actually given shows this objection to be without foundation. In addition to carefully detailed instructions on the various elements involved in the trial of criminal

actions and the presumptions protecting the defendant, the court carefully detailed all of the varying elements and aspects of the crime of abortion, and in connection with the matter particularly complained of stated:

"Thus, in the crime of abortion, a necessary element is the existence in the mind of the perpetrator of the specific intent to procure the miscarriage of the woman, and unless such intent so exists, that crime is not committed."

The trial court also instructed the jury that the prosecution has ". . . the duty and burden of proof to a moral certainty and beyond a reasonable doubt that the defendant either knew or believed that the woman was pregnant." "The gist of the offense of committing an abortion is the intent of procuring a miscarriage."

We have reviewed the entire transcript of the trial, and it appears that the cause was carefully and fairly tried and no prejudicial error was committed.

The judgment and the order denying the motion for a new trial are affirmed.

Griffin, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied July 14, 1959.