UNITED STATES *v.* RUSSELL.

*(District Court, W. D. Texas.* 1884.)

1. EVIDENCE—SIMILAR BUT UNCONNECTED TRANSACTIONS— GUILTY KNOWLEDGE.
     In an indictment for the falsification of an account, other false accounts made by the defendant at about the same time may be introduced in evidence for the purpose of proving guilty knowledge.
2. FALSE ACCOUNT.
     An account including items for services not actually rendered or moneys not actually paid is a false account.

**3. SAME—BY MEANS OF AN AGENT.**
    An officer who conspires with others to obtain money by false accounts is
    guilty of falsification though he may be ignorant of the items of any particu-
    lar account.

TURNER, J., (*charging jury*.) The law of the land is that every man
is presumed to be innocent until his guilt is established by the evi-
dence in the case beyond a reasonable doubt. By a reasonable doubt
is not meant a hypothetical, speculative doubt, but a doubt arising
from a want of sufficient evidence to satisfy the judgment and reason
of the jury that the defendant is really guilty as charged. In order
to convict the defendant you should be satisfied from the evidence
(1) that the account set out in the indictment is a false account;
(2) that defendant made, or caused the same to be made, if not
actually made by defendant, but by some other person acting for him
and under his direction and authority, then he caused it to be made;
(3) you must find that the same was made with the view and pur-
pose of presenting the same to the first auditor of accounts of the
treasury of the United States for approval; and (4) you must find
that the defendant *knew* the account to be false.

You must resolve each of these propositions in the affirmative be-
fore you should return a verdict of guilty. The three first proposi-
tions you must determine from the evidence which relates to the par-
ticular account mentioned in the indictment. When you come to the
consideration of the fourth proposition, *then*, and not till *then*, you
may consider the other accounts that have been introduced in evi-
dence. You may ask why were these accounts put in evidence at all?
The answer is, the law has made guilty knowledge an indispensable
ingredient in the offense, and you are required to pass upon this ele-
ment. The difficulty of proving by direct evidence what another man
knows you will readily discover. The law requires the best evidence
that the nature of the case admits of. And the idea being, as applied
to this case, that the defendant would be more likely to make out *one*
false account by accident, mistake, or otherwise, than he would to
make several. In other words, the likelihood that the defendant knew
the true character of the account would be strengthened in proportion
to the number of acts of a similar character done at or about the
same time. To illustrate, suppose you lose your horse; you find it
in the possession of A.; he asserts that he took the horse by mistake;
but you find that about the same time he took horses belonging to
several others; would not the fact that he took others about the same
time be proper evidence to be considered in determining the question
whether the particular taking was or not by mistake? The chances
of mistake decrease in proportion as the alleged mistakes increase.

I have tried by this branch of the charge to lay down the rule and
also to give you an idea of the reason upon which it is based, and
upon this point it is for you to determine from all the evidence
whether defendant knew the account to be false, if false it is. There

is no conflict in the evidence as to the character of the Jones account. It is shown that the defendant verified the account mentioned in the indictment, together with others, by his oath, stating that the same were *just;* that the services charged for had been actually rendered; and that the expenditures therein stated were actually paid in lawful money, as he believed, etc. This oath came properly in the line of his official duty, and it is upon the faith of this oath in a great measure the authorities act in approving and paying these accounts. The defendant has been upon the witness stand, and he states that, as a matter of fact, he did not know that the account mentioned in the indictment was and is a false account. The law has given to defendants the privilege of testifying in their own behalf. The weight to be given to his testimony is left with the jury to determine just as they determine the weight of the evidence of any other witness. If the jury believe him, they act upon his evidence accordingly. If, however, there is a conflict between his evidence and other evidence in the case, and the facts and circumstances in evidence which they do believe are inconsistent with the defendant's testimony, then, of course, the jury disregard his evidence. The jury being the exclusive judges of the weight of the evidence, and in the exercise of this function juries are not to lay aside their powers of reason and discrimination or their common sense.

What is a false account, within the meaning of the statute, as the same applies to marshals' accounts? Upon this point I charge you that if an account is made out for services that have not been rendered, it is to that extent a false account. If an account is made out for money actually paid out and expended, which, in fact, had not been paid and expended, the account is to that extent a false account. The mode of keeping marshals' accounts, as stated, is this: The marshal makes an estimate of moneys needed by him to defray expenses in serving process and in holding courts, and he makes a requisition for such amount. A draft is drawn upon the proper officer in favor of the marshal for the amount furnished, and the marshal is charged with that amount. To balance this or these charges, the marshal makes out his verified accounts, showing the actual services rendered and moneys actually paid out, for which he is credited, and when the supply is exhausted he makes another requisition, the government proceeding upon the pay-as-you-go system. When a man seeks and obtains a public office of confidence and trust he undertakes to bring to the discharge of the duties of that office care, caution, skill, and diligence proportionate to a full and fair discharge of the duties imposed, and if he knowingly shuts his eyes to passing events pertaining to a faithful discharge of the duties imposed he is guilty of negligence and dereliction of duty in case the confidence and trust reposed is thereby violated. While this is true, the law makes knowledge of the falsity of an account that is made out by the marshal, or by his direction, a necessary element in the offense,

which must be proven to the satisfaction of the jury before conviction. Still, it is proper for the jury to consider the nature of the trust, the duties thereby imposed, the intelligence of the party, the likelihood of knowledge upon a given point in issue, together with all the evidence before them upon the question of actual notice.

It is urged by the government that the evidence establishes as a fact that the defendant entered into a conspiracy with his clerks or deputies, or both, to the end that accounts should be made out, not for the actual services rendered, not for the actual expenses incurred, but for all such amounts as could be gotten through the departments at Washington and paid. If from the evidence you find that there was such an understanding between the defendant and any one or more of his clerks or deputies, and you further find that the account mentioned in the indictment is a false account, and was made in pursuance of the understanding that accounts were to be made out that should be false, then in that event I charge you that the law holds defendant guilty, the same as if he had made out the account himself, and he cannot protect himself by saying that he did not know the real character of the account. The rule of law being that when persons combine to do an unlawful act, the act of one is the act of all, and notice to one is notice to all, so far as it relates to acts done in furtherance of the common design and purpose. This question you will determine from all the facts and circumstances in evidence before you touching this particular question. It is insisted here by the able counsel for the defendant that the wrong, if any there be, is chargeable to the clerks and deputies of the defendant. In regard to that, I have this to say: The United States marshal has the absolute control of the business, as well as of the accounts of his office, and if from the evidence you believe that his clerks and deputies made out false accounts, but that the same was done with his knowledge and consent, then, as he had control over them, it would be unjust to cast reproach and obloquy upon them, they being but the instruments in the hands of the defendants to do the bidding of their principal, and in that event the consequences should be visited upon the defendant, and not upon those who had simply carried out the will and direction of their superior, as that would be making a scapegoat for the defendant of the agents he had employed to do his bidding in the matter, and for which he more than they should be held responsible, if responsibility there be. As I have said, the accounts in evidence, save and except the one set out in the indictment, are permitted to go to you only to aid you in determining the question whether the defendant knew the account mentioned in the indictment to be a false account, and further than that they have nothing to do with your deliberations. But it is proper for you to ask, could all these things that have been detailed by the evidence be done, and the defendant be ignorant thereof? for the evidence you have listened to, if true, shows a fearful condition of things, and you have a right to inquire for whose

interest have all these things been done. From an honest, actual expense account, no money could legitimately be realized by the defendant, or any one else. You have heard and seen that a large per cent. of the accounts in evidence are what is called actual-expense accounts, and you have been told what disposition was made of the money, as well as how those accounts were made up, and I charge you that if an actual-expense account is made out, and verified as such, when in fact the amount of moneys therein mentioned as expended were not in fact actually paid, the same is to that extent a false account.

It is urged that, as Sheely and McFarland had in fact spent time in endeavoring to arrest Smith and other persons that were accused of mail robbery, that the account is not false, because the same character of service had been performed by Sheely and McFarland for the government. The accounts should show just who rendered the service, and just what the services were, and just what was actually paid, and to whom. The accounts of Sheely and McFarland are before you, and if you shall find that they have been paid, or have been charged in their individual accounts for services rendered on other process, covering the same period as charged in the Jones account, it would follow that both cannot be true. One deputy may be allowed a *per diem* for endeavoring to make an arrest, but if his own account shows that he has charged for a given day or days, it would be a false charge to put a charge for *per diem* for the same days in somebody else's account, so as to reap the benefit thereof and get double or treble *per diem* pay. In other words, one deputy cannot have his own *per diem* and that of another for the same time. The accounts other than the Jones account, that have been given in evidence before you, are not for your consideration, except so far as they are shown to be false, and then for the purpose only, as I have heretofore stated.

It is urged that marshals could not make anything by charging only their fees as allowed by law. If it be true that the government is a hard taskmaster, it must also be admitted that no man is compelled to hold office, and a marshal is at liberty at any time to resign; so that the hardship, if hardship it be, is not a forced one.

As to the plea of a former conviction, I have this to say to you; That the record introduced by the defendant disproves the plea, and that matter constitutes no defense here, and you will not consider it. The case, so far as it relates to Mr. Wolf, has been dismissed, and with him as a defendant you have nothing to do.

I am not unmindful of the unrest that you have felt at what may have seemed to you as unnecessary delays in reaching a final determination of the case. But you must remember that from the first Tuesday of last month until the close of the term in Austin next July, this court may be in almost constant session, and that the district attorney, as well as myself, constantly employed, and that the mind as well as the body cannot stand a constant strain, and that therefore some little relaxation may be the best economy of time. I do not say

this because I have discovered any want of attention; quite the contrary; but I am conscious of your desire to return to your homes and to your families, and to your daily avocations. Justice demands a patient and careful investigation in order to arrive at a just conclusion. The case is of great interest both to the government and to the defendant, and the responsibility now rests with you to ascertain the truth, and when you shall have done so, it will be your bounden duty to declare it without reference to consequences. And your verdict will simply be, "We, the jury, find the defendant, Stillwell H. Russell, guilty as charged in the indictment;" or that "We, the jury, find the defendant, Stillwell H. Russell, not guilty." The question as to whether the defendant intended to defraud is not in the case, as that is not made an element in the offense charged.

¹ Verdict of guilty, April 4, 1883. Defendant sentenced to two years' confinement in penitentiary at Chester, Illinois.