[Crim. No. 1366. Fourth Dist. Nov. 21, 1958.]

THE PEOPLE, Respondent, v. THOMAS FRANKLIN MULLINAX, Appellant.

Thomas Franklin Mullinax, in pro. per., and Luther L. Leeger, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

GRIFFIN, P. J.—Defendant-appellant was convicted by a jury of unlawfully taking and driving a vehicle in violation of section 503 of the Vehicle Code. At the outset it was stipulated that a 1955 blue convertible Ford automobile with a 1956 license number BBL098, belonging to the Houston Brothers of San Diego, was on their used car lot on November 10, 1957, and that it was left in a locked condition; that on November 11th it was missing and no one, including defendant, had permission to take it away. A deputy sheriff testified that just north of the International Border he was on duty on November 13th; that about 1 a.m. defendant approached the checking station on Highway 101, bound for Mexico, driving this car; and that he was accompanied by another man. An examination was made of the automobile and no registration slip was present on the steering column. He was asked to produce it but failed to do so. He was ordered to the parking area and was interviewed by another officer. This officer found from his record that the car had been reported stolen. He searched defendant and found two car keys. He tried one of them on the car but it did not fit so he assumed the other did although he did not try it. He testified he had a conversation with defendant who then told him in the presence of another officer that he had borrowed the car in San Diego that evening from a Navy man named Faulkner, from the U.S.S. Yarnell, at Glen's Drive-in at 11th and B Streets; that defendant said he had been working at a Union Service station at 10th and C Streets; that he met the man riding with him in Glen's Drive-in and was giving him a ride to Tijuana; and that his guest knew nothing about the car. To another officer he later stated that on November 12th in the evening he was at Glen's Drive-in with his girl friend, whom he refused to name; that he there met a friend whom he had known for about five days and this friend was in the Navy aboard the U.S.S. Yarnell. He stated he did not know his name; that this friend offered him the Ford to use to go to Tijuana; and that he gave him the keys to it and he was stopped at the border driving it.

Defendant testified at the trial that he knew one James Forsythe for more than a year and a half; that defendant was driving his car about 10:30 p.m. on November 11th with his girl friend and with Forsythe; that later Forsythe told him to drive his car (the Ford in question) to Tijuana and that Jimmy Forsythe, the owner, stayed at Glen's Drive-in; that four other boys followed, in their Chevrolet, to Tijuana but they told defendant they did not want to cross the border because the car they were driving was "hot" and they had been "busted" for a narcotics violation while coming across the border; that the officers stopped defendant at the border and he did not know the registration slip was missing; that he took the key to the car out and placed it in his pocket; that he told the officers the car belonged to a buddy of his named Jimmy, who was at Glen's Drive-in; that he did not know his last name; that he *knew* his last name but was so "shook up" he didn't know what to say; and that he never told the officers he obtained the car from one Faulkner. He then testified a Mr. Forsythe later called at the jail and talked to him and that Forsythe agreed that if he (Forsythe) saw defendant's attorney, he would "tell him about it"; and that he failed to do so. He then said he had known Forsythe in the Navy for 1½ years and that he was on the U.S.S. Tingey. He then testified that he, defendant, had been on the U.S.S. Yarnell. He admitted telling the officers that Jimmy was on the U.S.S. Yarnell but he never was in fact on it; that the reason he lied was because he did not want to get him "mixed up" right then; that he knew he was charged with car theft but felt they might drop it to "joy riding, . . . like they did the last time." This testimony was volunteered by defendant on cross-examination as follows:

"Q. Why did you lie to Officer Mihelcich? A. I didn't want to get the boy in trouble. Q. Didn't you think you were in trouble? A. I didn't know whether it was car theft. I thought they might drop it to joyriding. Q. Like they did the last time? A. That is right."

Thereafter counsel for defendant moved for a mistrial. The motion was denied and the jury was admonished to disregard the prosecution's statement as to what "they did the last time." Defendant admitted he was never employed at the Union Oil Service Station, said he did not make that statement nor did he mention the name of Faulkner. After maintaining his innocence and lack of knowledge that the Chevrolet had been stolen, on cross-examination defendant was asked

if it was a fact that in July, 1956, he stole another car in a similar manner. He answered that he did not. Thereafter, in the absence of the jury the prosecution made an offer of proof in reference to another stolen car which defendant apparently admitted taking. Over objections, before the jury, the court allowed the following cross-examination:

"Q. You did steal a car in a similar manner in 1956, is that correct? A. That is right. . . . Q. You stole the car from a used car lot, isn't that correct? A. That is correct. Q. In the night time? A. That is right. Q. And at that time, at the time you were arrested, you were headed south down Pacific Highway toward Mexico, isn't that correct? A. I was coming down 101, I was stopped at Convair. Q. South toward Mexico? A. Well, I wasn't exactly headed toward Mexico. I was coming down town. Q. But you were headed south, isn't that correct? A. I was headed south. Q. At that time you had a hitchhiker in the car that knew nothing about the theft, isn't that right? A. That is true—that is right. Q. At that time you had the keys to the car? A. That is correct. Q. And at that time you admitted that you stole the car, isn't that correct? A. That is correct. Q. You were arrested in the early morning hours approximately 5 a.m., is that true? A. That is true."

Thereafter defendant produced a witness who claimed she was with defendant and a man named Forsythe when Forsythe requested defendant to push the 1955 Chevrolet for him with defendant's car because of battery failure of the Chevrolet.

An officer testified that he examined the visitors' cards at the county jail and one contained the name of "James Forsythe," address 934 18th Avenue; that he endeavored to serve a subpoena on him on behalf of defendant but found the number to be fictitious and he was unable to locate such a person. Other officers testified in rebuttal that defendant did tell them at the border the car belonged to one Faulkner aboard the U.S.S. Yarnell, and this name "Faulkner" was written on the arrest report by them. The evidence shows that the true owner of the Chevrolet went for his car at the border and found it had not been "hot wired"; that the battery was "in a good" condition; that there were no keys in the car but it started right away without any battery failure.

A Navy lieutenant then testified he checked the records of the U.S.S. Yarnell personnel back to August, 1956, and found no record of a service man thereon by the name of Faulkner or Forsythe; that the same result obtained from a search of

records pertaining to the Pacific fleet. Defendant admitted he had been discharged from the Navy on September 27, 1957, and had been looking for a job since that time.

The claim on appeal is that the trial court erred in permitting the district attorney to question the defendant regarding his arrest in July, 1956, and in admitting into evidence the answers to those questions since they were not similar acts and did not show system, design or intent, citing such authority as *People* v. *Lyon,* 135 Cal.App.2d 558 [288 P.2d 57] ; *People* v. *Webster,* 79 Cal.App.2d 321 [179 P.2d 633] ; *People* v. *Donaldson,* 130 Cal.App.2d 250 [278 P.2d 739] ; and *People* v. *Gibson,* 107 Cal.App. 76 [289 P. 937].

 It is true that in trying a person charged with one offense it is ordinarily inadmissible to offer proof of another and distinct offense, but this is only because the proof of the distinct offense has ordinarily no tendency to establish the offense charged, but whenever the case is such that proof of one crime tends to prove any fact material in the trial of another, such proof is admissible, and the fact that it may tend to prejudice the defendant in the minds of the jurors is no grounds for its exclusion. (*People* v. *McCaughan,* 49 Cal.2d 409, 421 [317 P.2d 974] ; *People* v. *Quisenberry,* 151 Cal.App.2d 157, 162 [311 P.2d 99].)

 In determining whether evidence of another crime is relevant to prove a material fact and not just criminal disposition, the trial court should be guided by the rule that such proof is to be received with extreme caution, and if its connection with the crime charged is not clearly perceived, the doubt is to be resolved in favor of the accused instead of suffering the minds of the jurors to be prejudiced by an independent fact, carrying with it no proper evidence of the particular guilt. Here, the defendant admitted driving the car which had been stolen and all evidence pointed to defendant as being the one who stole it. His only claim at the trial was that he was in innocent possession of it without any intent to steal it. The gist of the offense defined by section 503 of the Vehicle Code is the taking or driving of an automobile without the owner's consent and with the specific intent to permanently or temporarily deprive the owner of title to or possession of the automobile. (*People* v. *Sanchez,* 35 Cal.2d 522, 526 [219 P.2d 9].)

Similar offenses have been held admissible in cases involving checks drawn by a defendant on different occasions, to show specific intent and knowledge of the condition of this account

with the bank. (*People* v. *Youders,* 96 Cal.App.2d 562, 568 [215 P.2d 743] ; *People* v. *Molineux,* 168 N.Y. 264 [61 N.E. 286, 62 L.R.A. 193].) See also *People* v. *Sindici,* 54 Cal.App. 193 [201 P. 975], holding other contemporaneous acts of a similar character were admissible to show intent or to rebut the defense of accident or mistake in trials for arson or embezzlement, citing *Knights* v. *State,* 58 Neb. 225 [78 N.W. 508], and *United States* v. *Russell,* 19 F. 591. See also *People* v. *Bird,* 124 Cal. 32 [56 P. 639], as to forgery.

▉ It appears to us that the system or plan employed by defendant in taking another's car from a used car lot and appropriating it to his own use, as indicated, was sufficiently similar in significant respects to rebut the story of lack of knowledge of ownership and claimed innocence in relation to his authority to operate the car in question. (*People* v. *Choate,* 157 Cal.App.2d 782 [321 P.2d 815] ; *People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924] ; *People* v. *Bean,* 149 Cal.App. 2d 299 [308 P.2d 27].) It is to be observed in this connection that the trial judge, in admitting the testimony, over the objection indicated, limited its application. He said that the evidence of the prior offense was not received for the purpose of showing a propensity to commit crimes, but was ''only admitted for what light it may throw on the defendant's intent in this case as his plan, scheme and design.'' No prejudicial error resulted. (*People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243].)

Judgment affirmed.

Shepard, J., and Coughlin, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.