[Crim. No. 3725.   First Dist., Div. Two.   Dec. 15, 1960.]

THE PEOPLE, Respondent, v. HARDY WARNER, Appellant.

James R. Frolik, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, and Albert W. Harris, Jr., Deputy Attorney General, for Respondent.

KAUFMAN, P. J.—Defendant appeals from a judgment entered on a jury verdict finding him guilty of burglary in the second degree. The only contentions on appeal are that (1) the district attorney at the trial committed prejudicial misconduct in commenting on a question asked of the defendant by his own counsel; (2) the trial court erroneously admitted evidence relating to similar offenses. There is no merit in either of these contentions.

The record reveals the following facts: In February 1959, the appellant lived with one Joe Potter, in apartment Number 3 at 1223-34th Street in Oakland. The complaining witness, Lola Nolan, lived directly across the hall from apartment Number 3. On previous occasions, Mrs. Nolan had given the defendant permission to watch television in her apartment. On the evening of February 6, she asked the defendant to leave before midnight so she could go to sleep. When the defendant left, he was somewhat angry.

The next morning, February 7, Mrs. Nolan left her apartment about 7 a.m. and locked the front door; the back door of the apartment was locked by a slide lock on the inside. When she left, the television set was in the apartment. When Mrs. Nolan returned about 1:30 p.m., the television set was gone and the lock of her front door showed signs of tampering. The police arrived about 3 p.m. and found pry marks on the jamb of the front door as well as paint scrapings and chips outside the front door. Several days later, she asked the defendant about the television set; he stated he didn't know anything about it and hadn't seen anyone come up.

Frank Champion, the operator of the Paris Cleaners located about one block away from the apartment house, testified that about 2 p.m. on February 7, the defendant came into the shop with a television set. The defendant stated that the set belonged to him and that he wanted to borrow money on it, in order to take care of his daughter. The defendant signed an agreement permitting Champion to keep the television set as security and received $35. Champion kept the set until it was picked up by Inspector Roehl of the Oakland Police Department. At the trial, Mrs. Nolan identified the set as hers.

Inspector Roehl produced a statement taken from the defendant on February 18, in which the defendant stated that Mrs. Nolan had asked him to pawn her television set and had taken it with him the evening of February 6. He also stated he left the set with Champion for $35 and slipped the money under Mrs. Nolan's door in an envelope. Mrs. Nolan denied

giving the defendant permission to take her set or asking him to pawn it for her.

Ray Haskell, the landlord of the apartment house, testified that at the time in question, the defendant had been staying in apartment Number 3. On February 13, 1959, Haskell knew that Potter was in the hospital and had been so confined for about a week. On February 13, at about 5-6 p.m., Haskell saw the defendant, another man, and Mr. Champion in front of the apartment house loading Potter's refrigerator in a truck. Haskell took down the license number of the truck and told the defendant that Potter had told him that nothing was to be taken out of the apartment. The defendant stated that Potter had asked him to take the refrigerator to be repaired. Haskell told the defendant to leave the refrigerator where it was while he called the hospital. When Haskell returned after unsuccessfully attempting to reach Potter, the defendant, the truck and the refrigerator were gone. Later that evening, Haskell learned that the truck belonged to the Paris Cleaners.

Mr. Champion testified that on February 13, the defendant came into the cleaning shop and said he wanted to borrow money on the refrigerator in order to take care of his daughter and offered to sell the refrigerator to Champion for $65. The defendant told Champion that he had won both the television set and the refrigerator while gambling and so had no receipts or other evidence of ownership. Champion further testified that he went to the apartment house with the defendant to remove the refrigerator from Potter's apartment. Champion corroborated Haskell's testimony as to what transpired on the sidewalk and further testified that the defendant refused to accept any money from him while Haskell was present. On February 17, the police came to Champion's shop and he showed them the refrigerator and television set, a bill of sale for the refrigerator signed by the defendant; the police returned and took both items on February 20.

Mr. Dixon testified that he operated an automotive service at 34th and Adeline Streets in Oakland; that on February 6, 1959, the defendant asked one of the mechanics if he would lend him money on a hi-fi set and the mechanic refused. That same day, Dixon gave the defendant a ride home; when they arrived at the apartment house, the defendant asked him to come up and look at the hi-fi set. Dixon did so and offered the defendant $20. The defendant represented himself as "Joe Potter" and stated that he had to have the money for child support. The defendant and Dixon then carried the set down-

stairs, put it in Dixon's truck, and took it to Dixon's home, where the defendant signed a loan agreement with the name Joe Potter.

Joe Potter testified that the defendant was staying with him when he went to the hospital on February 4. At this time, a yellow refrigerator and hi-fi set which he was buying on time, were in the apartment. When Potter returned home briefly on February 6, both articles were gone. On February 6, the defendant had visited him in the hospital and told him a tube was broken in the hi-fi set and that he had sent it out to be fixed. Potter told him to get the set back to the apartment. On February 11, the defendant again visited Potter in the hospital and told him that the hi-fi set was fixed, but that he did not have the $10 to get it out of repair. At this time, the defendant also mentioned that Mrs. Nolan's television set had been stolen. On February 13, Haskell visited Potter at the hospital; told him about the refrigerator and gave him the license number of the truck which had taken the refrigerator away. Potter called the police the same day. On March 19, 1959, while cleaning the apartment, he found a slip pertaining to his hi-fi set behind a cupboard, with Mr. Dixon's name on it; he went to see Dixon and found his hi-fi set. Potter further testified that he did not give the defendant permission to take the refrigerator or the hi-fi set out of the apartment or to borrow money on either of them.

The defendant admitted the transactions as to the hi-fi set and refrigerator, but stated that Potter had instructed him to pawn the hi-fi set and sell the refrigerator.

■ The first argument on appeal is that the district attorney committed prejudicial misconduct in commenting upon a question put to the defendant on direct examination. Defendant's counsel was asking the defendant about the day the defendant first met Mr. Dixon. The defendant stated that he first saw Dixon at Potter's apartment. Then defendant's counsel asked:

"Q. May I ask you this: Did you first see this man Dixon at the apartment? A. Yes.

"Q. Did you—— A. He wasn't in the apartment; it was on the street, at the building, rather.

". . . . . . . . .

"MR. NUNES: Q. What I would like to get clear is: Was this your first meeting with Mr. Dixon or not?

"MR. SUTTON: I will object to that as having been asked and answered. He said he met him first at the building. *I will*

388

*object to the throwing of a lifeline at this time.''* [Emphasis supplied.]

Defendant's counsel then asked the court to instruct the jury to disregard this last remark of the district attorney, which the court did.

Defendant argues that the above italicized comment constituted such prejudicial misconduct that the judgment of conviction must be reversed. We cannot agree. Whether a remark is prejudical depends on the particular facts of each case, and a judgment will not be reversed unless the defendant has been denied a fair trial by the conduct of the prosecutor. (*People* v. *Derwae,* 155 Cal. 592, 596 [102 P. 266].) We think the comment when viewed in the context of the entire proceeding, is innocuous. Defendant's counsel at the trial was apparently satisfied with the trial court's ruling that the remark be stricken, as he did not request that the jury be specifically admonished on this matter. In the absence of a proper objection or assignment, misconduct of the prosecution cannot be urged on appeal. (*People* v. *Sutic,* 41 Cal.2d 483 [261 P.2d 241].)

The next argument is that the court erred by admitting the evidence relating to Potter's refrigerator and hi-fi set. This contention is equally without merit. When the witness Haskell first mentioned that he saw Potter's refrigerator on the sidewalk, defendant's counsel moved to strike the answer. After a discussion in chambers, the court ruled that the evidence was admissible for the limited purpose of showing intent or plan, scheme or design, and so instructed the jury. During the testimony of the witness Dixon about the hi-fi set, the court on its own motion, again instructed the jury that any evidence with respect to the hi-fi set as with the refrigerator, could be considered only for the limited purpose of showing intent, plan, scheme or design. It is well established in this state that evidence of other offenses may be received for such limited purpose. (*People* v. *Wade,* 53 Cal.2d 322 [348 P.2d 116] ; *People* v. *Ross,* 165 Cal.App.2d 447 [331 P.2d 652].) The test for the admissibility of such evidence is whether it tends to logically, naturally, and by reasonable inference, establish any material fact for the People or to overcome any material matter sought to be proved by the defense. (*People* v. *Sykes,* 44 Cal.2d 166 [280 P.2d 769].)

There can be no question that this test has been met here. The matter of the refrigerator and hi-fi set shows a substantial degree of similarity to the burglary of the television

set. (*People* v. *Mullinax*, 165 Cal.App.2d 449 [331 P.2d 1010].) The offenses are also closely related in time; on February 6, the defendant borrowed money on Potter's hi-fi set; the next day, he borrowed money on Mrs. Nolan's television set; and on February 13, he sold Potter's refrigerator. Defendant himself admitted his participation in the transactions concerning the refrigerator and hi-fi set. The evidence was also relevant to the defense of lack of intent. We can see no error in the admission of this evidence. (*People* v. *DeGeorgio*, 185 Cal.App.2d 413 [8 Cal.Rptr. 295]; *People* v. *Freytas*, 157 Cal.App.2d 706 [321 P.2d 782].)

We conclude that the judgment finds ample support in the record before us.

Judgment affirmed.

Draper, J., and Shoemaker, J., concurred.