[Crim. No. 1138.    Fourth Dist.    Apr. 22, 1958.]

THE PEOPLE, Respondent, v. ALEXANDER L. PIASCIK, Appellant.

Lionel Richman, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Albert Bianchi, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant and appellant Alexander Piascik was charged with defendant William H. Weese with violating section 476 of the Penal Code (fictitious checks). Count one involved a check for $108.91, dated January 20, 1956, and cashed in San Bernardino County. It was purportedly signed by one George C. Coates, a fictitiously named person, and was given to one Tolles, of the ''Food Bank Market.'' It was drawn on the Bank of America in San Bernardino. Count two involved a similar check in the same amount delivered to one Gorian, of ''Paul's Market.'' Count three was similar and the check was cashed by the ''Mount Vernon Highway Store.'' It was further charged that appellant had suffered a prior conviction of robbery and burglary and served separate prison terms in San Quentin. He pleaded not guilty as to each count and admitted the prior convictions. A jury trial resulted in a conviction of appellant Piascik on all three counts and a not guilty verdict as to defendant Weese. After denial of a motion for new trial Piascik appealed from the order and judgment claiming (1) That the evidence was insufficient to support the judgment; (2) No corroboration of the testimony of the accomplice; (3) Erroneous instruction; (4) Evidence improperly admitted as to other offenses; and (5) That certain evidence was improperly admitted which was obtained by illegal search and seizure.

The salient facts show that about December 17, 1955, one Briggs, a bellman at a hotel in Los Angeles, and who also operates a portrait studio, met appellant at a bar in that city. After some conversation, appellant asked him if he (Briggs) could photograph an application for a driver's license and make up a California driver's license from it. Briggs told appellant he would let him know. Briggs immediately called

the Los Angeles police, told them about the request of appellant. They gave him certain instructions and told him to make up the driver's license as requested by appellant. For some time thereafter the police kept appellant under quite constant surveillance. About January 16, 1956, a person who identified himself as appellant telephoned to Briggs and asked to meet him at "Major's Café" in Los Angeles, and said he would need a straight pen and black India ink. Briggs informed the police about this request and told them the address. They went there and parked near by. Briggs there met appellant and defendant Weese, the operator of the premises. Apparently the pen brought by Briggs was not satisfactory to appellant so he and one Johnson, an ex-convict, left to obtain another one. They returned and appellant asked Briggs to wait at the bar until he could get the material ready for him. Appellant and Johnson went to a back room and later came out, placed the material in Briggs' car, with the remark not to touch it "because it would smudge." It was a negative of a California driver's license and bore the signature of a "Francis W. Heney" and Number "B.9167483." On instruction from the police, Briggs copied it and delivered it to appellant for the agreed price of $15. Later, Briggs prepared others for appellant, who paid him for them.

On January 20th, a check made payable to "Francis W. Heney" was received from Johnson and cashed by Tolles at the "Food Bank Market." The check was endorsed "Francis W. Heney" and signed "George C. Coates" as maker. Other checks mentioned in the information were similarly passed. One contained the number B.9167483, as the identification of the operator's license presented by Johnson. Other similar checks which were cashed were received in evidence. On February 10, 1956, Briggs again called the officers and they saw appellant obtain additional driver's licenses Briggs had prepared for appellant for the sum of $30. The officers followed appellant to a room on Seventh Street. They knocked at the door and one Ross opened it. After identifying themselves they asked if they could enter and search the premises. The answer was "Yes, you can look at anything in this room." Appellant was seated on a couch. He was asked to take everything out of his pockets. He did so. In a pocket of a jacket belonging to appellant, found lying on a chair, was an envelope containing four California operator's licenses which were sealed in an envelope. Appellant said he found this

envelope near some restaurant.  At the trial he testified Briggs gave it to him.  It was established that George C. Coates was a fictitiously named person and there were no bank accounts in his name nor that of the maker in the bank on which they were drawn.

Johnson testified at the trial that he was introduced to appellant by defendant Weese; that they went into a back room at Weese's place and appellant took with him a bundle of blank checks he secured from his car and started to type out some checks, showing the date and name; that appellant used a check protector to fill in the amount, and he and appellant stamped the checks "Insured"; that Johnson signed the name "Francis W. Heney" on a plain chauffeur's license and also placed his thumb print on it; that the name "George C. Coates" already appeared on at least five of the checks as maker; that there were about 20 checks written for exactly $108.91, and several others; that he cashed at least three of the checks in San Bernardino County and later cashed seven the next night; that he then returned and gave the money he obtained on them to Weese's wife; that subsequently he and appellant got into an argument over the "split" of the money.

Appellant testified when he first met Briggs, Briggs told him he had connections with the Motor Vehicle Department and could obtain operators' licenses; that he purchased four to six drivers' licenses from Briggs and that he then resold them, including one to Johnson; that he met Johnson about January, 1956, but had not seen him since; that from Christmas, 1955, to February, 1956, appellant's right arm was in a sling from an injury and the sling was never removed during that period; that he typed nothing, signed no checks, had never seen them, and he was not guilty of the crime charged. There was evidence that appellant did not have his right arm in a sling at the time he was apparently typing out the driver's licenses and stamping the checks.  The officers corroborated Briggs' story about reporting appellant's request for photographs of operators' licenses, and testified they were stationed in cars near Major's café at the time Johnson said appellant used a typewriter in the back room.  They said they saw appellant and Briggs enter the place and that later Johnson and appellant left in a car; that they followed them and they later returned to the café; that when stationed near there they subsequently saw appellant and Johnson walk out; that Johnson was carrying a portable typewriter; that he put it in

a car which appellant drove away; that Johnson returned to the café; that several "undercover" police cars had followed appellant on many occasions and saw him, together with Johnson and others; and that following them was the result of information furnished by Briggs.

Handwriting experts testified that certain exhibits in evidence were in the handwriting of appellant. Witnesses who cashed the checks here involved identified Johnson as the one who presented them. They stated he endorsed the name "Francis W. Heney" on them, exhibited an operator's license issued to such a named person, and that they cashed the checks which were later returned by the named bank unhonored.

■ As to the first claim on appeal, it is argued that although the evidence might reasonably show that appellant assisted in forging operators' licenses and selling them, there was no evidence that he actually signed, endorsed or passed the checks as charged; that although there was evidence he did type and stamp some blank checks there was no evidence that the checks actually passed were the ones he typed and stamped. We see no merit to this argument. Section 476 of the Penal Code makes it a crime to attempt to or to make, pass, utter or publish, with intent to defraud, a check, knowing it to be fictitious. From the facts related it is clear that the jury was justified in believing these elements had been established and that the checks filled in by appellant were the same ones cashed by Johnson and that appellant aided and abetted in the commission of the crimes charged. (Pen. Code, §§ 31, 971, 972; *People* v. *Gutkowsky,* 100 Cal.App.2d 635 [224 P.2d 95]; *In re Lamey,* 85 Cal.App.2d 284, 288 [193 P.2d 66].)

As to the second claim, the testimony of the accomplice Johnson was sufficiently corroborated. (*People* v. *Griffin,* 98 Cal.App.2d 1, 28 [219 P.2d 519]; *People* v. *Channell,* 107 Cal. App.2d 192, 196 [236 P.2d 654]; *People* v. *Payton,* 36 Cal. App.2d 41, 52 [96 P.2d 991]; *People* v. *Temple,* 102 Cal.App. 2d 270, 277 [227 P.2d 500].) The weight to be given to the corroborative evidence was for the jury. (*People* v. *Trujillo,* 32 Cal.2d 105, 112 [194 P.2d 681].)

■ As to the third claim, it is the rule that one who, under the direction of an officer of the law or on his own initiative, and without criminal intent, feigns complicity in a crime merely to detect the perpetrator with a view to prosecution, is not an accomplice in the crime charged. (*People* v. *Griffin, supra,* p. 22.) ■ The claim that the evidence showed Briggs to be an accomplice or that it was a question

of fact to be determined by the jury was not sufficiently established so as to prevent the trial judge from giving the instruction complained of, i.e., that Briggs was not an accomplice. Even assuming he was, there was other competent evidence corroborating his testimony. No prejudicial error appears.

As to the fourth claim that evidence of other crimes, forgery and sale of operators' licenses, were not admissible under the evidence here produced, we see no merit. The evidence clearly shows the false drivers' licenses were manufactured for the purpose of, and were in fact being used for, identification in a check-passing scheme. This evidence was clearly admissible. (*People* v. *Kynette*, 15 Cal.2d 731, 746 [104 P.2d 794].)

As to the fifth complaint, the evidence secured from the appellant's jacket, when appellant was found in the room, was properly received in evidence. It was not illegally obtained. The officers followed appellant, knowing he was engaged in the falsification of operators' licenses, and was concerting with Johnson in their preparation, and in the preparation of checks to be issued and passed. They obtained this information from the informant Briggs and they had a right to rely upon it. They were invited to enter and search the room by the tenant. Appellant's jacket was found to contain some of the evidence of which the officers had knowledge, and apparently appellant gave a false report as to how he obtained it. No objections were made at the time as to the admissibility of such evidence on the ground that it was illegally obtained. There is no showing that, as a matter of fact, the officers did not have a search warrant at the time appellant was arrested. Under these circumstances there was no legitimate reason for applying the exclusionary rule. (*People* v. *Maddox*, 46 Cal.2d 301 [294 P.2d 6] ; *People* v. *Beard*, 46 Cal.2d 278, 280 [294 P.2d 29] ; *People* v. *Mann*, 148 Cal.App.2d 851, 854 [307 P.2d 684].)

Judgment and order denying a new trial affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 17, 1958. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.