[Crim. No. 3222.   Third Dist.   Jan. 30, 1962.]

THE PEOPLE, Plaintiff and Appellant, v. JAMES RYER-SON et al., Defendants and Respondents.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and C. Michael Gianola, Deputy Attorney General, for Plaintiff and Appellant.

Robert W. Anderson, under appointment by the District Court of Appeal, for Defendants and Respondents.

PEEK, P. J.—By information, defendants were charged with obtaining money by false pretenses from the Butte County Welfare Department, between May 1960, and September 23, 1960, in violation of Penal Code section 484. The jury returned a verdict of guilty as charged. Thereafter, defendants' motion for a new trial was granted, and the state now appeals from that order.

From the memorandum opinion of the trial court, which was included in its order granting defendants' motion, it appears that the basis for the court's action was that it believed that since sections 1500 et seq. of the Welfare and Institutions Code refer to prosecutions for other crimes (particularly perjury), but do not specifically provide for prosecutions in aid to needy children cases under Penal Code section 484, therefore, the legislative intent is that none shall lie. Secondly, it appears that a further basis for the action of the trial court was that it was of the opinion that the determination exercised by welfare department employees in approving applications for assistance was wholly discretionary with said employees and did not necessarily include reliance upon statements and actions of the defendants to the extent of establishing a crime of theft by false pretenses.

However, it further appears from the memorandum that the court was convinced that absent the questions just mentioned, the evidence was sufficient to sustain the conviction and that the jury had been fully and fairly instructed.

Although the evidence was not without conflict, even as between the defendants, we concur with the trial court that it was amply sufficient to support the verdict of the jury. The evidence relied upon by the prosecution shows that on December 31, 1959, defendant Judith Ryerson purportedly separated from her husband and codefendant, James Ryerson, while he was incarcerated in the Butte County jail. On January 5, 1960, Judith filed her original application for assistance for the defendants' children, under the Aid to Needy Children Act. (Welf. & Inst. Code, § 1500 et seq.) From the outset she was fully and fairly informed of, and was familiar with, the eligibility rules relative to aid to needy children and the regulations of the welfare department. It also appears that the instructions given her by department personnel emphasized the element of reconciliation and its effect upon her status as one receiving aid from the department.

During subsequent interviews with employees of the county welfare department, she stated she wanted nothing to do with her husband; that she was not interested in effecting a reconciliation; and that she intended to obtain a divorce. Later when asked concerning James' whereabouts, she informed investigators she understood he had left Oakland and had gone to Illinois. Subsequently she stated that he had returned to Oakland, but that she did not know where he was living. However, she admitted to neighbors that she did know where

he was. Later when confronted with the fact that James had been in Oroville, she stated that he came on weekends and then only to see the children. A friend testified that on one occasion she drove to Oakland with the defendants and that they occupied the same room. Numerous witnesses who were neighbors testified concerning incriminating statements made by Judith to them, and that she had expressed apprehension over her acceptance of aid for the children while continuing marital relations with her husband. Additional witnesses testified concerning the activities of both defendants, which were wholly incompatible with their avowed statement of separation.

When James was interviewed by an investigator from the district attorney's office, he stated he and Judith were not separated, that he stayed with her on weekends, and that he had been employed by a trucking firm in Oakland. In explanation of his actions, he in effect stated that it was easier for him to have the county support the children. At his place of employment he gave his permanent address as Oroville and indicated that he was married, giving Judith's name in case of need for notification. He further stated he had returned to Oroville in September and was living with a friend. When an investigator inquired at the address given he was told that the defendant was not living there, but that defendant had asked the informant to tell anyone who inquired that he did. Actually, he was living at another address.

In addition, an automobile dealer testified that both defendants had participated in the purchase of a car from him.

Under the provisions of said section 1500, Judith would only have been entitled to financial aid from Butte County because her children were "needy," having been "deprived of parental support . . . by the reason of . . . continued absence from the home . . . of a parent," in this case their father, the defendant James.

■ ▇▇▇▇ The evidence previously summarized establishes each element of the crime with which defendants are charged; that is, they are shown to have aided and abetted each other in knowingly making false statements to welfare workers in order to obtain money from the county; their statements were relied upon by the employees of the county; and they would not have received the same but for the false statements so made. However, defendants, in support of the comments of the trial court, contend that since perjury is the only offense

referred to in said section 1500, they could not be charged with a violation of section 484 of the Penal Code.

In the present case the provisions of the Welfare and Institutions Code and the Penal Code are no more antagonistic than were the provisions of the Education Code and the Government Code in *People* v. *Darby,* 114 Cal.App.2d 412 [250 P.2d 743]. There the court held that the laws of this state have been codified and "All of them combined speak for the sovereign power and all constitute but a single statute." (P. 422.) Again, quoting from the *Darby* case, here, as there, "The two codes are not antagonistic laws, but both are parts of the state's jurisprudence and must be harmonized and effect given to every section." (P. 424.) ▉ Thus, the mere fact that the Legislature has included provisions within the Welfare and Institutions Code which refer to prosecution for particular crimes (in this case, perjury) does not of itself indicate a legislative intent that prosecutions for other crimes provided for in the Penal Code must be precluded.

▉ Therefore, if it can be said that on the facts a prosecution under Penal Code section 484 was proper, then the order granting defendants' new trial must be reversed.

In *People* v. *Phipps,* 191 Cal.App.2d 448 [12 Cal.Rptr. 681], a similar situation was presented. There the reviewing court sustained the conviction of both husband and wife on a charge of violating section 487 of the Penal Code. In that case the wife's original application for payments for herself and her minor children was denied on the ground that the husband and father was employed and living in the family home. Thereafter, the wife reapplied, stating that the husband was absent from the home, and the welfare department authorized payment of aid on the ground that the children had been deprived of parental support by reason of the absence of the father. Subsequently, it was determined that the marriage of the defendants was not actually disrupted; that they were not living separate and apart; and that they had obtained welfare checks by falsely representing that the father was absent from the home. The court concluded that the evidence was sufficient to support "the implied finding of the jury that Mrs. Phipps made false representations of fact with intent to defraud and that she had no intention of keeping her promise to report the return of her husband to the home if that event occurred." (P. 453.) The court further concluded that: "Mr. Phipps' participation in the crime consisted in setting up an ostensible separate residence while he had ac-

tually continued to live with his wife and family . . . all the while knowing that welfare payments were being made on the basis that he was absent from the family. . . ." (P. 453.) (See also *People* v. *Bailey,* 55 Cal.2d 514 [11 Cal.Rptr. 543, 360 P.2d 39]; *People* v. *Shirley,* 55 Cal.2d 521 [11 Cal. Rptr. 537, 360 P.2d 33].)

In their reply brief, defendants, in support of the court's order granting a new trial, further argue that the court erred in admitting evidence of their conduct both before and after the period charged in the information.

"While it is true that evidence of other crimes is generally inadmissible (*People* v. *Wade,* 53 Cal.2d 322, 330 [1 Cal.Rptr. 683, 348 P.2d 116]; *People* v. *Albertson,* 23 Cal. 2d 550, 576 [145 P.2d 7]; Witkin, California Evidence, § 135, p. 158), there are a number of exceptions to the rule. Thus, evidence of other offenses is admissible if material to the proof of the crime charged (*People* v. *Kynette,* 15 Cal.2d 731, 746 [104 P.2d 794]; *People* v. *Piascik,* 159 Cal.App.2d 622, 628 [323 P.2d 1032]), to show motive, intent or knowledge (*People* v. *Westek,* 31 Cal.2d 469, 480 [190 P.2d 9]), and to show a common plan or scheme (*People* v. *Peete,* 28 Cal.2d 306, 317 [169 P.2d 924])." (*People* v. *Sylvia,* 54 Cal.2d 115, 119 [4 Cal.Rptr. 509, 351 P.2d 781].)

Thus, if the evidence tends " 'logically, naturally, and by reasonable inference, to establish any fact material for the people, or to overcome any material matter sought to be proved by the defense . . . then it is admissible, whether it embraces the commission of another crime or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not.' " (*People* v. *Sykes,* 44 Cal.2d 166, 170 [280 P.2d 769].) Necessarily, therefore, since the evidence in question related to activities similar in material elements to the ones which formed the basis of the charge contained in the information, it was admissible to show defendants' knowledge and understanding of the circumstances, their criminal intent, plan and scheme, and to corroborate the evidence of false pretenses. Furthermore, the trial court specifically instructed the jury it could only be considered for this limited purpose.

Defendants' final argument is equally without merit. Although under the applicable statutory provisions the determination to grant assistance to applicants for aid is, in the final analysis, predicated solely upon the recommendation of the social worker in charge of the case, such fact would not

remove the case from the provisions of section 484 of the Penal Code if, in fact, all of the necessary elements of that code provision did exist. Obviously, the recommendation of the case worker must necessarily be predicated upon information received from the applicant or otherwise. If the information so received had been given knowingly with the intent to defraud, and aid is given which would not have been given had the true facts been known, a crime has been committed. The cases heretofore cited are equally applicable in this regard as approving the specific action taken by the district attorney.

The order is reversed and the cause is remanded to the trial court with instructions to enter judgment in accordance with the verdict of the jury.

Schottky, J., and Pierce, J., concurred.